```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF MISSISSIPPI
                    NORTHERN DIVISION


DEMETRICK STRATTON                                   PLAINTIFF

VS.                          CIVIL ACTION NO. 3:20-CV-00202-TSL-RPM

JACKSON STATE UNIVERSITY                             DEFENDANT
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of defendant Jackson State University (JSU) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Demetrick Stratton has responded in opposition to the motion. The court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be granted in part and denied in part.

Plaintiff was employed as a property or inventory control specialist at JSU from 2014 until his termination in March 2019. Following his termination, he filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging disability discrimination and retaliation, and after receiving a notice of right to sue, he filed the present action alleging that he is disabled and that JSU violated the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101–12213 (ADA), the Rehabilitation Act, 29 U.S.C. §§ 701–795, and Title VII of the

1

Civil Rights Act of 1964, 42 U.S.C. 2000e-2000e-17, by terminating his employment because of his disability and in retaliation for his filing of a previous EEOC charge of disability discrimination and retaliation.[1] JSU has moved for summary judgment as to plaintiff's claims. Regarding his disability claim, JSU argues that (1) he cannot establish a *prima facie* case of discrimination because he has no proof that he is disabled and (2) he cannot show that JSU's articulated reason for his termination is pretext for discrimination. JSU further contends that plaintiff's retaliation claim fails for lack of proof of causation.

Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

1   Plaintiff's Title VII claim is purportedly based on retaliation for his having complained about disability discrimination. This is not a cognizable claim, as Title VII does not provide protection against retaliation based on complaints of disability discrimination. See Omogbehin v. Cino, 485 F. App'x 606, 611 (3d Cir. 2012) ("A Title VII retaliation claim must thus be based upon discrimination made unlawful by Title VII" and since "Title VII does not address discrimination based upon disabilities", retaliation for opposing disability discrimination is not protected under Title VII); Branscomb v. Sec'y of Navy, 461 F. App'x 901, 906 (11th Cir. 2012) (same_).

2

Fed. R. Civ. P. 56(a).  The moving party "bears the burden of establishing that no genuine issue of material fact exists." Eastman Mach. Co., Inc. v. United States, 841 F.2d 469, 473 (2d Cir. 1988) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970)).  If the moving party satisfies its burden, then the non-movant "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) (quotation and footnote omitted).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id. at 254, 106 S. Ct. 2505.

Facts

On September 23, 2016, while employed with JSU, plaintiff went to the St. Dominic Emergency Department, complaining of back and leg pain.  He was diagnosed with sciatica and discharged with prescriptions for enough hydrocodone (for pain) and methylprednisolone (for inflammation) to last him a week.  He was also given a medical excuse for work, indicating he could return to work on September 27, 2016, with a restriction that he could lift no more than five pounds.  Plaintiff informed JSU of his lifting restriction; and yet, plaintiff alleges, his

3

immediate supervisor, Jay Thompson, while issuing plaintiff written directives to not lift more than five pounds (so as to make it appear he was honoring this restriction), regularly instructed him verbally to perform tasks that exceeded his lifting restriction (including moving heavy furniture). According to plaintiff, although he complained to Thompson's supervisor, Lakitha Hughes, she did nothing to prevent Thompson's continuing disregard of plaintiff's lifting restriction.

Plaintiff asserts that in March 2018, he was injured on the job as a result of Thompson's insistence that he perform tasks outside his medical restriction.[2] By August 2018, the injury had worsened to the point that he sought medical attention at Baptist Medical Center Emergency Department. Following his emergency room visit, plaintiff was given a medical excuse, authorizing his return to work on August 6, 2018, with a five-pound lifting restriction. Plaintiff submitted the excuse to JSU but claims that Thompson continued to direct him to perform tasks requiring him to lift more than five pounds.

---

2   He also alleges that he tried to file a workers' compensation claim based on this injury, but that JSU did not respond to his request. That has no direct bearing on his claims herein.

4

On December 14, 2018, plaintiff filed a charge of discrimination with the EEOC, complaining of disability discrimination and retaliation. Thereafter, on February 27, 2019, plaintiff was issued a final written warning for poor conduct/rule violation – a charge which he denied (and denies). Two weeks later, he was terminated. He filed a second EEOC charge relating to his termination and then filed this action.

Retaliation

The ADA and Rehabilitation Act prohibit retaliation against an individual because he has opposed or complained about possible discrimination.³ The Fifth Circuit has applied the same standard for analyzing retaliation claims brought under the ADA and Rehabilitation Act as applies to Title VII retaliation claims. See Calderon v. Potter, 113 F. App'x 586, 592 (5th Cir. 2004). When a plaintiff presents indirect or circumstantial evidence of unlawful retaliation, the court applies the McDonnell Douglas burden-shifting scheme, under which the

---

3   See 42 U.S.C. §12203(a) ("No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."); 29 C.F.R. § 1614.101 ((b) ("No person shall be subject to retaliation for opposing any practice made unlawful by … the Rehabilitation Act").

5

plaintiff must first establish a *prima facie* case of unlawful retaliation, by showing that (1) he engaged in an activity protected by the ADA, (2) he suffered an adverse employment action, and (3) there is a causal connection between the protected activity and the adverse action. <u>Lyons v. Katy Indep. Sch. Dist.</u>, 964 F.3d 298, 303-04 (5th Cir. 2020).  If the employee succeeds in establishing this *prima facie* case, the employer must come forward with a legitimate, nondiscriminatory reason for its action.  <u>Id.</u>  If it does so, the employee must then show that the proffered reason is a pretext for retaliation.  <u>Id</u>.  "Ultimately, the employee must show that 'but for' the protected activity, the adverse employment action would not have occurred."  <u>Id.</u> (internal quotation marks and citation omitted).

Plaintiff engaged in protected activity on December 14, 2018 by filing an EEOC charge.  He was terminated three months later.  Thus, he has established the first and second elements of his *prima facie* case.  JSU concedes this.  But it contends plaintiff has no evidence to support the existence of a causal connection between his filing the EEOC charge and his termination.  The court concludes otherwise.  "[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action [can be] sufficient evidence of

6

causality to establish a *prima facie* case [if] the temporal proximity [is] 'very close.'" Aguillard v. Louisiana Coll., 824 F. App'x 248, 251 (5th Cir. 2020), cert. denied, 141 S. Ct. 1079 (2021) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S. Ct. 1508, 149 L. Ed. 2d 509 (2001)). Here, there is no evidence as to when JSU actually learned of plaintiff's EEOC charge. The charge was filed on December 14, three months before he was terminated. That is sufficiently close to support a finding of *prima facie* causation, especially when considered along with the fact that the March 12, 2019 letter from Robert Watts, Executive Director of Facilities, to Human Resources Director Robin Pack, recommending plaintiff's termination, cited, among other alleged reasons for his termination, the alleged fact that "Employee recently brought a letter into the office from the EEOC to the Property Manager and verbally expressed that 'I told yall that I wasn't playing.'"[4] See id. ("While a four-month gap may be sufficient evidence of causation, a five-month gap is too long absent other evidence.").

JSU argues that even if plaintiff could establish a *prima facie* case of retaliation, it is still entitled to summary

---

4   Plaintiff denies this.

judgment because he cannot prove that its proffered reason for his termination is pretextual. That reason, as described in JSU's memorandum in support of its motion is that "Plaintiff was prone to temperamental outbursts, convinced that his supervisor and co-workers were 'out to get him,' and … his erratic, unprofessional, and threatening behavior got progressively worse during the course of his employment with JSU", which was frightening to his co-workers. This downward spiral, claims JSU, culminated in a final incident in late February 2018 in which plaintiff was allegedly on his phone "being very irate, talking loud and using obscene language in the presence of other co-workers."[5] Plaintiff has submitted an affidavit denying these assertions and offering his version of specific incidents cited by JSU as evidence of his erratic, unprofessional and threatening behavior.

Based on its review of the evidence submitted by the parties, the court concludes that plaintiff has adduced sufficient evidence of pretext to withstand summary judgment. JSU's evidence as to the circumstances surrounding and reasons for plaintiff's termination is inconsistent, vague and

---

5   Plaintiff does not deny that he spoke loudly and used profanity in a phone call but claims that it did not occur at work or on JSU property, and was a conversation involving his family and did not involve his employers or co-workers.

confusing. Plaintiff's supervisor at JSU, Jay Thompson, described certain incidents involving plaintiff but his recollection was poor and his descriptions of events he could recall were vague, at best. The deposition testimony of Robert Watts, head of plaintiff's department and the individual who purportedly wrote the letter recommending the termination, was inconsistent not only with that of Thompson[6] but even with his own recommendation letter. These witnesses' testimony hardly presents a clear, cohesive or coherent picture of the circumstances leading to or reasons for plaintiff's termination.

JSU has also presented a December 2018 letter to plaintiff from Robin Pack, head of the human resources department, describing some interaction between them; but there is no accompanying explanation of the vague references therein to plaintiff's personal problems and how they may have related to his job performance. JSU's evidence alone, without even taking

---

6   For example, Watts testified that plaintiff had made a "life threat" against Thompson, that was not only verbal but physical; he lunged across the desk in an attempt to attack Thompson. Thompson recalled that he had been discussing something with plaintiff in the hallway – he did not recall what – and at the end of their conversation, plaintiff made the comment that the warning comes before the fall. He interpreted this as a threat. There was no lunging across any desk; they were not even in an office but the hallway. Moreover, whereas Watts testified that a life threat warrants immediate termination, the alleged threat occurred in November 2018, four months before plaintiff was terminated.

9

into account plaintiff's affidavit, is probably sufficient in itself to create an issue of fact as to pretext.  Adding plaintiff's affidavit to the mix makes this certain.  Accordingly, summary judgment will be denied as to plaintiff's retaliation claim.

### Discrimination

The ADA provides that no covered employer shall "discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... discharge of employees." 42 U.S.C. § 12112(a).[7]  Under the applicable McDonnell Douglas framework, plaintiff's *prima facie* case of disability discrimination in regard to his termination requires him to prove that (1) he has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was terminated on account of his disability. Moore v. Centralized Mgmt. Servs., L.L.C., No. 20-30332, 2021 WL 406101, at *2 (5th Cir. Feb. 4, 2021) (citing Cannon v. Jacobs Field Servs. N.A., Inc., 813 F.3d 586, 590 (5th Cir. 2016)).  The ADA defines a disability as "(A) a physical or mental impairment

---

7   The ADA and Rehabilitation Act are judged under the same legal standards, provide the same remedies and have substantially equivalent definitions of "disability."  Kemp v. Holder, 610 F.3d 231, 234-35 (5th Cir. 2010) (citations omitted).

that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." Id. § 12102(2)(A).

Plaintiff contends that he was continuously disabled from the time of his emergency room visit in September 2016 to the time of his termination in March 2019 – two and a half years later – solely because the emergency room physician at St. Dominic in 2016 gave him a return-to-work medical excuse which included a five-pound lifting restriction. He contends that because he was never "released" from this restriction, it remained in effect as a permanent restriction. This is not a reasonable position. Plaintiff has offered no evidence that this lifting restriction, issued by a doctor who saw him briefly on a single occasion - was intended to be permanent, and there is no evidence in the record that would support a reasonable inference to that effect. The evidence, in fact, suggests otherwise. In particular, in January 2018, plaintiff presented at the St. Dominic emergency department complaining of low back

11

pain. He was released to return to work with a restriction from lifting more than five pounds for a period of only *five to seven days,* which suggests (1) that he was not under an existing lifting restriction and that (2) the lifting restriction imposed at that time would not last beyond one week.[8]

Certainly, a five-pound lifting restriction would qualify as substantially limiting a major life activity. See Mercado Cordova. Walmart Puerto Rico, Inc., 369 F. Supp. 3d 336, 352 (D. P.R. 2019) (ten-pound lifting restriction considered a disability). Further, there is no requirement that a limitation be permanent to qualify as disability under the ADA. Thus, plaintiff could well be found to have been disabled for some period of time following his September 2016 visit to the emergency room. But in the absence of evidence that this restriction imposed in September 2016 was still in effect at or near the time of termination – and there is no such evidence -- a jury could not reasonably find that plaintiff was terminated on account of such disability. See Willis v. Noble Env't Power, LLC, 143 F. Supp. 3d 475, 480 (N.D. Tex. 2015) (plaintiff failed to meet burden to prove *prima facie* case where there was no

---

8   Between the September 2016 visit and the January 2018 visit, plaintiff claims he was seen in the emergency room in May 2017; but in his deposition, he could not recall the reason for the visit.

12

evidence from which a reasonable jury could conclude he was disabled at the time of the adverse employment action).

The same reasoning applies to plaintiff's August 3, 2018 visit to the emergency room at Baptist Memorial Hospital because of back pain. On that occasion, plaintiff was given a medical excuse which indicated that he could return to work on August 6, 2018 with a five-pound lifting restriction. Upon his return to work and for at least some period of time thereafter, it probably could be fairly assumed he was disabled for purposes of the ADA, even though there is no evidence in the record that even hints at a diagnosis or at what specific symptoms or condition may have prompted this lifting restriction. But in addition to those omissions of proof, there is also no evidence to show how long this lifting restriction was to remain in effect, including whether it was to remain in effect indefinitely, and more pertinently, to show that it was in effect at or near the time of his termination.

The court recognizes that an ADA plaintiff's burden to prove an actual disability is not a heavy one, and that "'substantially limits' should be interpreted to provide broad coverage of individuals…to the maximum extent permitted by the terms of the Act." 29 C.F.R. §1630.2(j)(iv). But plaintiff can

only succeed on his claim that he was discharged on account of an actual disability if he was, in fact, actually disabled, not at some remote time months or years earlier, but at the time of his termination. Accordingly, defendant's motion for summary judgment will be granted as to plaintiff's discrimination claim.[9]

Based on the foregoing, it is ordered that defendant's motion for summary judgment is granted in part and denied in part.

SO ORDERED this 6th day of April, 2021.

/s/Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[9] Plaintiff does not contend that JSU perceived him as having an impairment. Rather, his claim is that he was actually disabled, that JSU knew he was actually disabled, and that it discriminated against him based on his actual disability. See Williams v. Tarrant Cty. Coll. Dist., 717 F. App'x 440, 447 (5th Cir. 2018)(providing that "[u]nder the amended regarded-as standard, a plaintiff 'needs to plead and prove only that [he] was regarded as having a physical or mental impairment [and not] that the actual or perceived impairment substantially limited one or more major life activities'")(quoting Adair v. City of Muskogee, 823 F.3d 1297, 1306 (10th Cir. 2016)).

14